■ MICHAEL FIORE, Appellant, v FERDINAND FIORE et al., Individually and as Trustees under the Will of MICHAEL FIORE, Deceased, Respondents.— In an action, *inter alia,* to set aside a sale of stock, plaintiff appeals from an order of the Supreme Court, Richmond County, dated January 11, 1977, which denied his motion for a preliminary injunction and for summary judgment and granted defendants' cross motion for summary judgment. Order affirmed, with $50 costs and disbursements, upon the opinion of Mr. Justice Barlow at Special Term. Rabin, Hawkins and O'Connor, JJ., concur; Shapiro, J., dissents and votes to modify the order by (1) deleting the first decretal paragraph thereof and substituting therefor a provision that the cross motion is denied and (2) deleting from the second decretal paragraph thereof the provision denying the branch of plaintiff's motion which sought a preliminary injunction and would remand to Special Term for consideration of that branch of plaintiff's motion, with the following memorandum, in which Hopkins, J. P., concurs: Plaintiff, by order to show cause, moved for an injunction *pendente lite* to enjoin the defendants and, more particularly, the defendant Ferdinand Fiore "from exercising any and all powers and attributes of ownership with respect to the 20 shares of stock in Fiore Brothers, Inc. that were originally owned by Michael Fiore, now deceased, and sold to defendant, Ferdinand Fiore, on or about February 5, 1976 by the trustees of the trust created under the Last Will and Testament of Michael Fiore, which powers and attributes shall include, but not be limited to, the power to sell said stock and the power to vote said stock". Defendant Ferdinand Fiore cross-moved "for an order dismissing the complaint * * * and directing that summary judgment be entered in favor of defendants and against the plaintiff, upon the ground that the cause of action has no merit". Special Term denied plaintiff's motion, granted defendants' cross motion and dismissed the action. Plaintiff is the son of Antonio Fiore. The latter, together with his two brothers, Michael (not the appellant here) and Ferdinand, owned and operated a closely held business known as Fiore Brothers, Inc. The business was incorporated in 1930. It was then, and is now, a family business engaged in selling fuel oil and coal on Staten Island, New York. Immediately prior to 1953, the shares of Fiore Brothers, Inc., were owned by the original three Fiore brothers, Antonio, Michael (not the appellant) and Ferdinand, as follows:

| Antonio | - 65 shares |
| Ferdinand | - 65 shares |
| Michael | - 20 shares. |

On January 15, 1953 the brothers entered into a shareholders agreement, the preamble of which recited, *inter alia,* that: "the individual parties hereto desire to keep the ownership of the stock of the Corporation in themselves and their surviving spouses and sons so far as is possible and circumstances will permit, and * * * it is also the desire of the individual parties hereto to keep the control of the Corporation in themselves, and their surviving spouses and sons, so far as is possible and circumstances will permit". The 1953 agreement further provided: 1. That a selling shareholder had to offer his shares in equal amounts to the other "individual parties" to the agreement (paragraph 1 of the agreement); 2. That Michael Fiore (one of the original brothers, not appellant) could purchase shares from his brothers so as to make him an equal shareholder in the corporation along with his brothers (paragraph 11 of agreement); and 3. That the selling price of shares would be roughly equal to their book value (paragraphs 2 and 4 of agreement). The agreement also provided, in paragraph 10, that any of the brothers could sell or give any or all of his shares to any of his sons, notwithstanding the sale restrictions imposed by paragraph 1 of the agreement. Antonio and Michael Fiore are now deceased. The shares owned by Antonio passed, at his death, equally to his three sons. Appellant Michael Fiore is one of Antonio's three sons. The shares owned by Michael, one of the original brothers, upon his death, passed to his three sons, the respondents Louis, Alphonse and Anthony Fiore, in trust for the benefit of Michael's surviving spouse. According to clause (B) of paragraph TENTH of Michael's will, his trustees were authorized and empowered to sell his shares in Fiore Brothers, Inc., in accordance with the 1953 agreement. Michael Fiore (the original brother) lived for 13 years following the execution of the 1953 agreement. He did not, in those 13 years, exercise the right given to him in that agreement to become an equal shareholder of the corporation. He died in 1966 owning 20 shares. At his death, the families of Antonio and Ferdinand Fiore each owned the same number of shares in the corporation. In order to preserve this equality as between those two family branches, a second agreement was entered into on July 2, 1968 among Antonio, Ferdinand and their sons. That agreement provided, among other things, that a selling shareholder-son had to offer the shares first to his father, and second to his brothers before he could offer his shares to anyone else. Thus, the 1968 agreement insured the equal shareholdings of the families of Antonio and Ferdinand so long as any single member of either family wanted to preserve family equality. In February, 1976, Michael's trustees sold their shares in the corporation to the defendant Ferdinand Fiore, thereby giving his branch of the family control of the corporation. Plaintiff contends that the 1953 agreement required that those shares should have been offered in equal proportions to the sons of Antonio Fiore. It is not disputed that the shares were not sold for book value as required by the 1953 agreement. Plaintiff's complaint seeks to overturn the sale as violative of the 1953 agreement. Clause (a) of paragraph 1 of the 1953 agreement provides that the "individual parties" thereto may not dispose of the stock except in accordance with its restrictive provisions. The question before Special Term was whether the words "individual parties" included the sons of the original signatories or only the signatories themselves. Special Term held: "There was a *restriction* on the sale of stock during the lifetime of the original shareholders, i.e., a first option provision in favor of the corporation and/or other stockholders, and did not amount to a *prohibition* on the sale of the stock" (emphasis by Special Term). The conclusion of the Special Term might have been sustainable had it been reached after a

plenary trial of the issue. It cannot be sustained on a motion for summary judgment, where issue-finding and not issue-deciding is the standard. The recitals in the 1953 agreement seem to indicate that it was the intention of the parties to bind their sons to the agreement. At the very least, those recitals make the purpose of the agreement ambiguous and, therefore, the Special Term was not warranted in flinging off the factual issues by a grant of summary judgment. To sustain the Special Term decision would mean that immediately after the 1953 agreement was entered into, any of the parties thereto could at once have transferred his stock to his sons, who could then have sold those shares of stock to a nonmember of the family, thereby eviscerating the apparent purpose of the agreement to keep the business solely within the control of the Fiore families. In coming to the conclusion that it did, the court favored certain of the provisions of the 1953 agreement over others. That it could not do on a motion for summary judgment. To determine what the parties intended, since the agreement is clearly ambiguous on the question at issue, its purpose and intent must be gathered "not only from the instrument itself but from the circumstances surrounding its making and its expressed purpose and intent" (Matter of Herzog, 301 NY 127, 137). The recitals in the agreement must be considered to discover the intent of the parties (see Note, Effect of Recitals in Contracts, 35 Col L Rev 565, 568). Upon a trial, the court, in reaching its conclusion, should give effect and meaning to all parts of the agreement in an effort to reconcile any ambiguities that exist therein (see Muzak Corp. v Hotel Taft Corp., 1 NY2d 42; Rentways, Inc. v O'Neill Milk & Cream Co., 308 NY 342). Under the circumstances, the order appealed from should be modified by denying the cross motion for summary judgment and the action should be remanded to Special Term to pass upon the branch of plaintiff's motion which sought pendente lite relief, the merits of which it did not reach in view of its dismissal of plaintiff's complaint.