CONFIDENTIAL BROKERAGE SERVICES, INC., Respondent, v CONFIDENTIAL PLANNING CORPORATION et al., Appellants, et al., Defendants. [924 NYS2d 207]—

McCarthy, J. Appeals from an order and amended order of the Supreme Court (Tait, J.), entered February 19, 2010 and February 24, 2010 in Broome County, which, among other things, granted plaintiff's motion for a preliminary injunction.

Defendant Confidential Planning Corporation (hereinafter CPC) is a financial services company that specializes in investment and retirement plans for school system employees, among others. Plaintiff provides similar services. In 2002, the two entered into a billing services agreement where plaintiff would pay CPC to perform billing and remittance services for school district employees that plaintiff serviced. In 2006, defendant Pinnacle Holdings, LLC purchased CPC as part of a stock purchase agreement. Defendant Confidential Planning I, LLC was formed as a subsidiary of Pinnacle's parent corporation. These three defendants (hereinafter collectively referred to as defendants) shared an address and had several officers and partners in common.

In May 2008, CPC ceased providing remittance services to plaintiff. Thereafter, CPC sent a mailing to solicit business from potential clients, some of whom were plaintiff's clients. In June 2008, principals of plaintiff and CPC met and signed an agreement whereby plaintiff agreed not to sue CPC for failing to give effective notice that it was terminating the 2002 agreement,

and CPC agreed not to solicit or contact plaintiff's clients for a three-year period. Shortly thereafter, plaintiff commenced this action alleging, as relevant here, that defendants breached the covenant not to compete. Plaintiff moved for a preliminary injunction seeking to enjoin defendants from contacting or soliciting its clients. Following a hearing, Supreme Court granted the preliminary injunction. Defendants appeal.[1] To obtain a preliminary injunction, plaintiff was required to establish "the likelihood of ultimate success on the merits, irreparable injury and a balancing of equities in [its] favor" (*Ulster Home Care v Vacco*, 255 AD2d 73, 76 [1999]; *accord Town of Elmira v Hutchison*, 53 AD3d 939, 940 [2008]). The decision to grant or deny such a motion rests in the trial court's discretion and will be disturbed only if that discretion was abused (*see Cooperstown Capital, LLC v Patton*, 60 AD3d 1251, 1252 [2009]). Supreme Court did not abuse its discretion in granting plaintiff's motion.

The June 2008 agreement provides that neither "CPC nor its affiliated companies will solicit, contact or pursue clients of [plaintiff] for which CPC previously provided common remittance for purposes of soliciting said clients to become clients of CPC for a period of three (3) years." Defendants contend that no meeting of the minds occurred so as to form an enforceable contract. At the hearing, however, CPC's former president, who signed the agreement on CPC's behalf, testified that CPC did not intend to contact or solicit plaintiff's clients. Although he originally stated that plaintiff's clients included only those highlighted by plaintiff on a list provided by CPC in March 2008, he acknowledged that the client list was not clear or definite, and he knew that the list was incomplete. He conceded that the term "clients" could include all those for whom CPC "previously" provided remittance services at any prior time on behalf of plaintiff. While the term "clients" may need to be more clearly defined later in this action, Supreme Court found that the parties had a sufficient understanding of that term so as to determine that a valid contract was entered into. The court issued a preliminary injunction limited to those clients whose names were on a list submitted by plaintiff at the hearing, thereby creating a definite class, as opposed to including unknown clients, and making it clear who defendants were precluded from soliciting. While plaintiff's ultimate success is not guaranteed, a likelihood of success was established.

The loss of clients and goodwill could create irreparable harm

---

1. Supreme Court issued an amended order correcting typographical errors. Defendants appeal from both the order and amended order.

(*see Alside Div. of Associated Materials v Leclair*, 295 AD2d 873, 874 [2002]). Plaintiff offered proof that CPC provided remittance services for nearly all of plaintiff's clients, thereby giving CPC access to clients' contact and financial services information. While plaintiff did not have exclusive contracts with those clients, and the clients could choose a new financial services provider at any time, plaintiff would be harmed if CPC used the compiled contact information to solicit all of plaintiff's clients. Plaintiff alleged that it had already lost 25 individual clients, some current clients were confused by the solicitations from CPC and plaintiff would continue to suffer irreparable harm from further solicitation (*see id.*). Weighing this harm against the limited prejudice to CPC if it is prevented from soliciting certain clients for a three-year duration, the equities balance in plaintiff's favor. Accordingly, Supreme Court did not abuse its discretion when it granted plaintiff a preliminary injunction.

The June 2008 agreement prohibited CPC or "its affiliated companies" from contacting or soliciting plaintiff's clients. Although Confidential Planning I and Pinnacle are separate corporate entities from CPC, based upon the interrelationship of those entities with CPC, it was reasonable for Supreme Court to preliminarily enjoin them all as affiliated companies.

Prior to the issuance of a preliminary injunction, plaintiff was statutorily required to give an undertaking in an amount fixed by Supreme Court (*see* CPLR 6312 [b]; *Cooperstown Capital, LLC v Patton*, 60 AD3d at 1253). The court did not set an amount for an undertaking. As an undertaking is a statutory requirement that cannot be waived, we must remit for the court to set a proper amount (*see Rourke Devs. v Cottrell-Hajeck, Inc.*, 285 AD2d 805, 805-806 [2001]; *Honeywell, Inc. v Technical Bldg. Servs.*, 103 AD2d 433, 434 n [1984]). We realize that this is largely an illusory victory for defendants because the three-year period covered by the covenant not to compete ends on June 26, 2011. Plaintiff concedes that the preliminary injunction will expire on that date.[2] Thus, although we are required to remit based upon Supreme Court's failure to order the statutorily required undertaking, the practical effect of our decision will be minimal because the preliminary injunction may expire before the parties are even able to appear in court on the remittal.

Mercure, J.P., Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the order and amended order are modified, on the

---

2. Had this appeal been decided after that date, we would have dismissed the appeal as moot (*cf. General Elec. Co. v Metals Resources Group*, 293 AD2d 417, 419 [2002]; *Quandt's Wholesale Distribs. v Giardino*, 89 AD2d 669 [1982]).

law, without costs, by adding a provision thereto that plaintiff shall post an undertaking as provided in CPLR 6312 (b) in an amount set by Supreme Court; matter remitted to the Supreme Court for that purpose; and, as so modified, affirmed.